The opinion of the court was delivered by
Marr, J.
Mrs. M. M. Blanchard, wife of Lucius Suthon, sold half *1333 of a plantation in Assumption parish to Francis W. Pike, and for the deferred payments he executed three promissory notes, each for $3750, payable to her order, and secured by vendor’s mortgage. She retained one of the notes, and indorsed two of them to Edward J. Gay & Oo.
On the sixth of May, 1875, all these notes having matured, Mrs. Suthon brought suit on the one held by her; and, on the same day, on the answer and confession of Pike, judgment was rendered in her favor, with recognition of her mortgage rights; and on the twenty-seventh of May, Edward J. Gay & Oo. brought suit on the two notes held by them, and on the same day they obtained judgment on the answer and confession of Pike, with recognition of their mortgage rights on the same property.
On the second of January, 1877, a writ of fieri facias issued on the judgment in favor of Mrs. Suthon, under which the sheriff seized, on the tenth of January, seventy-five hogsheads sugar, in the sugar-house of Pike; and on the twelfth of January, Edward J. Gay & Oo. caused execution to issue on their judgment, under which the sheriff seized one hundred and one hogsheads sugar, including the seventy-five already seized under Mrs. Suthon’s writ, and eighty-one barrels molasses, not seized under her writ.
By agreement of counsel representing both the seizing creditors, the seventy-five hogsheads seized by both were shipped by the sheriff to Edward J. Gay & Co., at New Orleans, “ to be by them sold in the market, the proceeds of which shall be held by the said Gay & Oo. to abide the decision of the court upon the claims of said Mrs. Suthon and said Gay & Oo. for priority and preference to the said proceeds;” and on the twelfth March, the sheriff returned both writs, stating the seizure under each, the agreement, which he made part of his return, and that the proceeds of the seventy-five hogsheads, 'in the hands of Gay & Co., amounted to $6615 35.
On the eleventh May Mrs. Suthon filed a third opposition in the suit of Gay & Co. vs. Pike, in which she gave the history of the seizures, and the agreement, and claimed to .be paid the amount of her judgment, in full, out of the proceeds of the seventy-five hogsheads, as first seizing creditor. Gay & Co. and the sheriff, parties to this petition of third opposition, excepted that the sheriff was without interest, and had no funds subject to his control. Gay & Oo. also plead that the sugar in question, with the consent of opponent, was released from seizure by the sheriff and shipped to them, and by them sold, and proceeds retained subject to their lien, privilege, right of pledge and pawn, to pay and re-imburse them for advances made to Pike, in 1876, for the cultivation of the plantation, and the making and saving of the crop, under their agreement with Pike, of fifth February, 1876, recorded on the *1334 same day in the parish in which the plantation is situated, and. that these advances amounted to $12,744 70, on account of which Pike had paid them $4828 58, leaving balance due them $7916 12.
They also plead that the seizure by opponent, of the seventy-five hogsheads, was in violation of their rights, she well knowing that they had made all the advances to Pike, during the year 1876, to make and take off his crop, and that they were entitled to a privilege on the same to secure payment: and they prayed that the demand of opponent be dismissed, and that the superiority of their lien and privilege be recognized, and they be decreed entitled to retain the proceeds in their hands to pay and satisfy their claim.
It was admitted on the trial that the sheriff was without interest,, and that the proceeds of the sugar had never been in his hands: and the suit was dismissed as to him. The district court maintained the opposition and claim of Mrs. Suthon, and decreed that her judgment be paid and satisfied out of the proceeds of the seventy-five hogsheads in the hands of Gay & Oo.
There is no controversy about the account of Gay & Co., which is proven by several witnesses. The advances were made under a notarial contract, of date fifth February, 1876, by which Gay & Oo. agreed to furnish Pike during the year supplies and money, not to exceed $4200, exclusive of interest, commissions, charges, and expenses, and Pike granted them a lien, privilege, pledge and pawn, on the growing crop, and obligated himself to ship it to Gay & Oo. for their security, as provided by the act of 1874, p. 114.
When the seizure was made by Mrs. Suthon, if Gay & Oo. had any superior right or claim to the property, they should have asserted it, contradictorily with her, by third opposition. Instead of doing this, they seized under their judgment; and the sugar in controversy went into their possession only under the agreement, subject to the rights of the seizing creditors respectively.
The notes and mortgage on which the judgments in favor of Mrs. Suthon and Gay & Oo. respectively were rendered gave them no right of preference or privilege on the gathered crop; but the personal judgment, in favor of each of them, entitled them to seize any property of their debtor subject to execution. As the seizure by Mrs. Suthon was first in date, it gave her a right of preference, unless some fact or circumstance gave Gay & Oo. a superior right. The terms of the agreement would seem to limit the question of preference to the effect of the respective seizures.
If it be conceded that Gay & Co., notwithstanding the agreement under which they obtained possession of the sugar seized, would have had the right, in virtue of their contract, to apply the proceeds to the *1335 payment of their advances, the amount secured by the contract was expressly limited to $4200, exclusive of commissions, interest, etc.; and up to the eighteenth of December, 1876, they had received and sold ■sugar and molasses, and carried the proceeds, amounting to $4828 58, to the credit of Pike, as shown by their account current, made up to sixth March, 1877. In addition to this, they had the proceeds of the ¡seventy-five hogsheads, $6615 35, and of twenty-six hogsheads sugar and eighty-one barrels molasses not seized by Mrs. Suthon, but seized under their judgment, on the twelfth January, 1877, no part of which figures in that account. The counsel of Gay & Oo. argue that they had ■a pledge and pawn of the entire crop; and were entitled to retain the •entire proceeds on account of their entire debts. This might have been true if there had been no special contract fixing the amount to be advanced and secured by pledge of the crop; and if Pike, their debtor, had shipped the entire crop to them, and they had received the shipment, or bill of lading or letter of advice before any seizure was made. But Pike did not ship the seventy-five hogsheads to them, and he could not have done so, because the sheriff had seized and taken them out of his possession; and he no longer had the right or the power to ship or ■otherwise to control them. The sheriff shipped the sugar in question for a specific purpose; and it would not have been shipped to Gay & Oo. except under the agreement, and for the purpose specified. Mrs. Suthon 'had seized it, and Gay & Oo. had seized it; and it was shipped to Gay & Oo. by the sheriff, because the parties seizing so agreed. The sugar did not go into the possession of Gay & Oo. as consignees or agents of Pike, their debtor, but as consignees of the sheriff, who was not their debtor; and they received it impressed with whatever right Mrs. Suthon had acquired by the seizure under her judgment, on the tenth January, 1877.
If Gay & Co. could be heard, under their agreement with Mrs. Suthon, to assert any right to the sugar in question other than that growing out of their seizure, it is certainly not that of the consignee, for ■the reasons already stated, and for the additional reason that that privilege is expressly subordinated to that of a creditor resident of the ■State, acquired before the consignor has received the goods, or a bill of lading, or a letter of advice, or invoice showing that they have been •dispatched to him. B. O. O. art. 3247. It is not the privilege established by article 3217, in favor of the creditor for necessary supplies, •and for money used for the purchase of supplies and for the payment of necessary expenses for any farm or plantation, because the constitution, article 123, declares that no privilege shall affect third parties mnless recorded in the parish where the property is situated: and it is snot that which the contract of fifth February, 1876, was intended to *1336 secure, because the amount secured by that contract was limited; and the proceeds of the crop received and sold up to the eighteenth December, 1876, nearly a month before Mrs. Suthon’s seizure, carried to the credit of Pike’s account, amounted to $4828 58, or more than' $600 in excess of the limit, excluding interest, commissions, etc.
A factor agreeing with a planter for future advances, can not always know exactly what amount the planter will need. The law requires, whatever be the form of the contract, mortgage, or pledge, that it mention the amount of the debt to be secured, and that it be recorded in the manner provided by law. R. C. C. article 3158. Manifestly, the whole object of recording would be defeated if the act of mortgage or privilege were allowed to secure any amount not limited. Therefore, in such.cases, it is usual to fix the limit of the advances, not to exceed a certain amount. Up to the amount thus fixed the security would be good, if valid in other respects; but it cannot be extended so as to cover any sum whatever beyond the limit fixed in the contract.
Mortgages to secure future advances are usually so drawn as to cover any deficiency in the crop or goods with reference to which the advances are to be made. But a pledge, or lien, or privilege on the goods or crop is different. It is not intended to secure a balance: the object is to secure the sum advanced, to obtain possession of the goods or crop, and to apply the proceeds to the payment. If the proceeds do not suffice to pay the debt, of course they can not secure the balance; because the balance is what remains unpaid after the proceeds have been exhausted; and in no event can the pledge, or lien, or privilege be extended, to the prejudice of other creditors, beyond the amount stated in the contract.
If the rights of the parties are to be determined by the contract of fifth February, 1876, the debt secured by that contract had been paid and extinguished more than twenty days before the seizure by Mrs. Suthon. If they depend upon the seizures, Mrs. Suthon’s was two days in advance of that of Gay & Co. In any aspect of the case, the right of Mrs. Suthon to be paid, by privilege and preference out of the proceeds of the seventy-five hogsheads sugar in the hands of Edward J. Gay & Co., the special consignees and depositaries, seems clear beyond doubt or question; and we find no error in the judgment of the district court so decreeing.
The judgment appealed from is therefore affirmed with costs.
Rehearing refused.